UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br><br>v.<br><br>IVY BYRD GAINES,<br><br>                Defendant. | No. CR03-496Z<br><br>ORDER |

**BACKGROUND**

       The United States charged Defendant Ivy B. Gaines with robbing a total of ten banks, credit unions, and other business establishments, and with the use of a firearm during eight of those robberies. Defendant pleaded not guilty to all counts, and a jury trial began on March 14, 2005. The United States introduced physical evidence used in the various robberies, including demand notes, currency, pillowcases, clothes, and firearms, in addition to testimony from tellers who identified the Defendant at a show-up or line-up, and in court. Defendant Gaines testified on his own behalf and denied the robberies. Defendant admitted to lies in his past, but stated he was not lying about his lack of involvement in the bank robberies. Defendant testified that on October 17, 2003, the day of the last robbery, he had

ORDER  1–

loaned his car to "Fat Joe" and "Mike," and it had been returned shortly before he was arrested with $15,000 and a gun in the back seat.

The United States concluded its rebuttal closing argument with the following statements, which the Court felt may have inappropriately appealed to the emotions of the jury:

> But [Mr. Gaines is] not the unluckiest man in the world. This man is not unlucky. *He's a robber, and he's a liar. He took the stand, and he lied to you.* But, worse, he held up those people in those banks. That's worse.
>
> And really, members of the jury, luck has nothing, nothing to do with this case. It's not about the fates, it's not about the cosmos, it's not about luck. Wrong place, wrong time, it's not about that. It's about choices. Choices. this man chose to walk into each of those banks, he chose to put a gun in those tellers' faces, he made those choices. *And he chose, he chose, to get on that witness stand, he took an oath, and he lied to you.* His choices.

Tr. at 67-68 (emphasis added). After the case was sent to the jury, the Court notified the parties of its concern with particular statements by the prosecutor, and questioned whether those statements were inappropriate.

Defendant Ivy Gaines moves the Court for a new trial based upon these comments by the prosecutor during closing. See Defendant's Motion for a New Trial, docket no. 85.

## DISCUSSION

To prevail on a motion for new trial based on prosecutorial misconduct, a defendant must show that (1) prosecutorial misconduct occurred; and (2) it was more probable than not that the misconduct materially affected the fairness of the trial. United States v. Atcheson, 94 F.3d 1237, 1244 (9th Cir. 1996). A new trial should be granted only where the prosecutor's conduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Id. (citing Darden v. Wainwright, 477 U.S. 168, 181 (1986)). As a general rule, "inappropriate prosecutorial comments, standing alone, would not justify [reversal of] a criminal conviction obtained in an otherwise fair proceeding." United States v. Young, 470 U.S. 1, 11-12 (1985). Such misconduct "must be examined within the context

ORDER  2–

of the trial to determine whether the prosecutor's behavior amounted to prejudicial error." Id. at 12.

### 1. Prosecutor's Statements

The United States urges the Court to find that the Prosecutor's "isolated" uses of the words "liar" an "lied" did not constitute prosecutorial misconduct. The United States argues that such statements were permissible inferences drawn from conflicting testimony, and that the "inference was unavoidable" that either the Defendant or the government's witnesses were lying. See, e.g., United States v. Molina, 934 F.2d 1440, 1444 (9th Cir. 1991) (in "instances of flatly contradictory testimony on important issues . . . it was proper for the government to argue that the jury ought not to believe the [defendant's] version."). There is no question but that the Defendant's testimony directly contradicted that of the government's witnesses.

However, the Court remains deeply troubled by the prosecutor's rebuttal closing. While the use of the word "lie" or "liar" as characterizations of the Defendant's testimony are permissible, the use of those words as part of an emotional plea are improper. The prosecutor should have relied on the evidence, and not on an inappropriate appeal to the jury's emotions. While the prosecutor's demeanor and method of delivery is not reflected in the transcript, the Court finds that the prosecutor's demeanor, tone, and words spoken were unprofessional and bordering on misconduct. The prosecutor attacked the Defendant's testimony by repeatedly asserting that he was a "liar."

The Defendant urges that the prosecution's rebuttal argument had the effect of vouching for the truthfulness of the government's witnesses. See United States v. Roberts, 618 F.2d 530, 533 (9th Cir. 1980) (prosecutor may not vouch for the credibility of a government witness); see also United States v. Necoechea, 986 F.2d 1273, 1276 (9th Cir. 1993) ("[v]ouching consists of placing the prestige of the government behind a witness through personal assurances of the witness' veracity"). Here, the prosecution did not

ORDER  3–

identify inconsistencies in Defendant's testimony as grounds for concluding that he was untruthful. Instead, the prosecution improperly injected its personal judgment regarding the defendant's truthfulness by calling him a liar.

Notwithstanding, the Court concludes that the prosecutor's statements did not rise to the level of "prosecutorial misconduct." See Atcheson, 94 F.3d at 1244.

**2.    Impact of the Prosecutor's Statements on the Fairness of the Trial.**

A Defendant's motion for a new trial on prosecutorial misconduct should be granted "only where the prosecutor's statements 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" Id. (quoting Darden, 477 U.S. at 181). Where the defendant fails to object, the Court should correct "only particularly egregious errors . . . that seriously affect the fairness, integrity or public reputation of judicial proceedings." Young, 470 U.S. at 15. In evaluating the alleged misconduct, the Court considers the context of the statements, including the strength of the evidence suggesting guilt, the nature of the comments, and the neutralizing effect of the jury instructions. United States v. Laurins, 857 F.2d 529, 539 (9th Cir. 1998); Sassounian v. Roe, 230 F.3d 1097 (9th Cir. 2000); United States v. Bracy, 67 F.3d 1421, 1431 (9th Cir. 1995).

The prosecutor's statements here were offset by the Court's instructions to the jury. See Jury Instruction No. 7 ("[a]rguments and statements by lawyers are not evidence" and "[w]hat they . . . will say in their closing arguments . . . is not evidence"). In addition, the evidence against the Defendant was overwhelming. The evidence against the Defendant included a gun, a pillowcase with $15,000, a demand note, clothing stained with red dye, and the identification of the Defendant by more than a dozen bank tellers and the Defendant's wife. The prosecution's case against this Defendant was overwhelming, and the physical evidence supporting the conviction was substantial.

The prosecutor's comments in this case were isolated in time, and followed substantial evidence of guilt. Taken with the neutralizing effect of the jury instructions, the

ORDER   4–

Court concludes that there was no impact on fairness of this trial sufficient to warrant the granting of a new trial.

## CONCLUSION

Defendant's Motion for a New Trial, docket no. 85, is DENIED.

IT IS SO ORDERED.

DATED this 25th day of April, 2005.

*Thomas S. Zilly*
Thomas S. Zilly
United States District Judge

ORDER 5–