THE HONORABLE THOMAS S. ZILLY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR03-496-TSZ |
| Plaintiff, | MOTION TO REDUCE SENTENCE PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)(i) |
| v. | |
| IVY BYRD GAINES, | **Oral Argument Requested** |
| Defendant. | Noted for October 9, 2020 |

## Motion

Ivy Byrd Gaines respectfully moves this Court for an order reducing his sentence to a total of 240 months, or 20 years, based on "extraordinary and compelling" circumstances: (1) significant changes in federal sentencing law since he was sentenced, and (2) the ongoing coronavirus pandemic. This motion is brought pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) as amended by the First Step Act on December 21, 2018. Mr. Gaines further requests that the Court first rule on his eligibility for relief, and if it determines that he is eligible, permit him to more fully develop mitigation information which would broadly inform the Court's exercise of discretion on how much of a reduction should be granted. This would include additional information and evidence concerning the 18 U.S.C. § 3553(a) factors, Mr. Gaines's post-offense rehabilitation efforts, and the issue of safety to the community. Mr. Gaines is incarcerated at USP Pollock in Louisiana and presently under COVID-19 quarantine, which has limited my communication with him to written correspondence.

**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, Washington 98101**
**(206) 553-1100**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

## I.       Introduction

Mr. Gaines "was sentenced under a far more draconian federal sentencing scheme than exists today." *United States v. Quinn*, No. 91-cr-00608-DLJ-1 (RS), __ F. Supp. 3d __, 2020 WL 3275736 (N.D. Cal. June 17, 2020) (granting compassionate release based on changes in federal sentencing law, including on his stacked § 924(c) counts). Mr. Gaines has been incarcerated since his arrest on October 17, 2003, at age 38. At the time of his arrest, he had no prior criminal history. PSR ¶¶ 10–11. He will be 56 years old this October. After rejecting a settlement offer of 25 years' imprisonment, Mr. Gaines exercised his Sixth Amendment right to trial, and was convicted of ten counts of various statutory forms of robbery along with eight counts of brandishing a firearm during those robberies. Dkt. 84. At the time of his sentencing, 18 U.S.C. § 924(c), as interpreted by *Deal v. United States*, 508 U.S. 129 (1993), required this Court to sentence Mr. Gaines to seven years of imprisonment for the first § 924(c) conviction and 25 years for each additional § 924(c) conviction. It further required that the 25-year sentences be "stacked," i.e., to run consecutive to each other and to all other sentences imposed. This resulted in 182 years of imprisonment for these stacked sentences consecutive to the 595 days imposed for his robbery convictions.[1] The Court had no choice but to impose this absurdly long sentence.

The decision in *Deal* has been roundly criticized by courts, former justices and judges, and even by the Sentencing Commission. Finally in 2018, Congress, with the amendments it made to 18 U.S.C. § 3582(c)(1)(A) as part of the First Step Act, empowered this and other courts to assert its appropriate role in our criminal justice system and to revisit sentences in "extraordinary and compelling" cases. *See* PL 115-

---

[1] After Mr. Gaines was sentenced, the Supreme Court determined that in circumstances where a defendant must be sentenced to a lengthy mandatory minimum sentence the Court has the discretion to sentence that defendant to as little as one day for any remaining non-mandatory minimum convictions. *Dean v. United States,* 137 S. Ct. 1170 (2017).

MOTION FOR COMPASSIONATE RELEASE
PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)(i)
(*Ivy Byrd Gaines*, CR03-496-TSZ) - 2

**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, Washington 98101**
**(206) 553-1100**

391, 132 Stat. 5194, at § 603 (Dec. 21, 2018). Mr. Gaines's case and sentence is one of those cases.

In the absence of any medical, age, or family-related issues, a number of district courts have now employed the First Step Act and its clarification of § 924(c) to find "extraordinary and compelling" circumstances warranting a sentence reduction based on changes in federal sentencing law, including for defendants subjected to extraordinarily long sentences based on the now outmoded and mandatory requirement of "stacking" multiple enhanced § 924(c) charges in the same indictment. *See United States v. Jones*, __ F. Supp. 3d __, 2020 WL 5359636, at *8 (N.D. Cal. Aug. 27, 2020) ("this Court joins the growing majority of courts in holding that 'sea changes' in sentencing law wrought by *Booker* and the FSA [citations omitted], weigh strongly in favor of reducing Mr. Jones's sentence."); *Quinn*, 2020 WL 3275736 (granting compassionate release based on changes in federal sentencing law, including mandatory "stacking" of § 924(c) charges even though Quinn did not suffer from health conditions putting him at risk for COVID-19); *United States v. McCoy,* No. 2:03-cr-197, 2020 WL 2738225 *(*E.D. Va. May 26, 2020) *(*421-month sentence based largely on stacked § 924(c) counts reduced to the 17 years the defendant had already served); *United States v. Haynes*, No. 93-cr-1043 (RJD), __ F. Supp. 3d __, 2020 WL 1941478 (E.D.N.Y. Apr. 22, 2020) (the "sea change in § 924(c) law, coupled with the brutal impact of the original sentence, is an extraordinary and compelling circumstance warranting a reduction in sentence under the compassionate release statute."). Mr. Gaines requests that this Court reach the same conclusion and reduce his unnecessarily unjust sentence.

## II.    Factual Background

Mr. Gaines was charged with armed bank or credit union robbery in violation of 18 U.S.C. § 2113(a) and (d) (counts 1, 3, 5, 10, 11, 13, and 17); unarmed bank robbery

MOTION FOR COMPASSIONATE RELEASE
PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)(i)
(*Ivy Byrd Gaines*, CR03-496-TSZ) - 3

**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, Washington 98101**
**(206) 553-1100**

1   in violation of 18 U.S.C. § 2113(a) (count 7); "Hobbs Act" robbery in violation of 18

2   U.S.C. § 1951 (counts 8 and 15); and using a firearm during and in relation to a crime

3   of violence in violation of 18 U.S.C. § 924(c) (counts 2, 4, 6, 9, 12, 14, 16, and 18) with

4   respect to eight of those robberies. Dkt. 35.

5       He was offered a settlement under which he would receive a total sentence of 25

6   years. At age 40, having never previously served a term of imprisonment, Mr. Gaines

7   chose trial in a desperate attempt to avoid leaving his family and spending more than

8   two decades in prison. He was convicted of all counts—ten robbery counts and eight

9   § 924(c) counts. Mr. Gaines was then sentenced to 182 years on the § 924(c) counts,

10  and a consecutive 595 days on the robbery counts, for a total sentence of almost 184

11  years. His "release date" is April 8, 2166.

12      On August 14, 2020, Mr. Gaines submitted a request for a sentence reduction for

13  extraordinary and compelling circumstances to the warden at USP Pollock. Ex. 1. As of

14  today's date, the warden has not acted on that request and the Bureau of Prisons

15  ("BOP") has not filed a motion on Mr. Gaines's behalf with the Court. *Id.*[2]

16  **III.   Discussion**

17      The Court now has the authority to reduce Mr. Gaines's sentence based on the

18  extraordinary and compelling circumstances presented. First, it has the jurisdiction to

19  hear this motion because "the statutorily required 30-day period has expired with no

20  action by the warden of his facility." *United States v. Anello*, No. 2:12-cr-00131-RAJ,

21  2020 WL 3971399, at *3 (W.D. Wash. July 14, 2020). Second, the changes to 18

22  U.S.C. § 3582(C)(1)(A)(i) made by the First Step Act have finally vested *the Court*

23  with the authority to decide when extraordinary and compelling circumstances warrant

24  a sentence reduction. Third, a 184-year sentence for a first time offender for crimes in

25

26  _____

[2] Exhibit 1 is a copy of the request Mr. Gaines mailed to counsel. I expect to receive a signed declaration from Mr. Gaines supporting what is stated in the attached exhibit. That signed declaration will be filed on receipt.

MOTION FOR COMPASSIONATE RELEASE
PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)(i)
(*Ivy Byrd Gaines*, CR03-496-TSZ) - 4

**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, Washington 98101**
**(206) 553-1100**

which no one was physically harmed nor a firearm discharged is unjust and calls out for a substantial reduction.

### A.    The Court Has Jurisdiction to Grant Release for "Extraordinary and Compelling Reasons."

The compassionate release statute was first enacted as part of the Comprehensive Crime Control Act of 1984. It provided that a district court could not modify a final term of imprisonment except in four situations, one of which was the existence of "extraordinary and compelling reasons" warranting the reduction, as determined by the sentencing court. But although the courts had the final decision-making authority over whether a sentence would be reduced, the statute imposed a gatekeeper—that authority could be invoked only upon a motion by the Director of the BOP. Without such a motion, sentencing courts were powerless to reduce a prisoner's sentence, even if the court concluded that extraordinary and compelling reasons warranted the reduction. 18 U.S.C. § 3582(c)(1)(A)(i); *see also* PL 98–473 (H.J.Res. 648), PL 98–473, 98 Stat 1837 (Oct. 12, 1984).

That changed when Congress enacted the First Step Act, which amended § 3582(c)(1)(A). *See* PL 115-391, 132 Stat. 5194, at § 603 (Dec. 21, 2018). In *United States v. Zullo*, the Second Circuit Court of Appeals, joining a number of district courts, held that:

> [T]he First Step Act freed district courts to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release. Neither Application Note 1(D), nor anything else in the now-outdated version of Guideline § 1B1.13, limits the district court's discretion.

*United States v. Zullo*, __ F.3d __, No. 19-3218-CR, Opinion at 18 (2d Cir. Sept. 25, 2020).

Under the amended statute, a court can now reduce a sentence for "extraordinary and compelling reasons" in *two* circumstances: (i) if the Director of the BOP files a

MOTION FOR COMPASSIONATE RELEASE
PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)(i)
(*Ivy Byrd Gaines*, CR03-496-TSZ) - 5

**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, Washington 98101**
**(206) 553-1100**

motion requesting such relief; or (ii) "upon motion of the defendant," if the defendant has fully exhausted all administrative remedies to appeal the BOP's failure to bring a motion, or if 30 days has lapsed "from the receipt of such a request by the warden of the defendant's facility," whichever is earlier. 18 U.S.C. § 3582(c)(1)(A). *See also United States v. Reynolds,* No. 2:18-cr-00131-RAJ, 2020 WL 3266532 (W.D. Wash. June 17, 2020) (matter exhausted where defendant "has either exhausted administrative review of the Bureau of Prisons' failure to bring such a motion, or waited until 30 days after the request was made to the warden where the inmate is housed, whichever is earlier.").

Mr. Gaines submitted his request to the warden through his unit team on August 14, 2020. Ex. 1. Because the required 30-day period has expired without action from the BOP, the matter is ripe for this Court's consideration.

### B. The Relief Requested Here Is Consistent with the Text of the Statute and the Sentencing Commission's Policy Statement.

#### 1. Congress Did Not Limit "Extraordinary and Compelling Reasons" to a Specific, Enumerated Set of Circumstances.

Congress did not define what would constitute an "extraordinary and compelling reason" warranting a reduction of a sentence under § 3582(c). Indeed, the legislative history confirms that it intended to grant federal sentencing courts broad discretion to make those determinations on a case-by-case basis and to reduce fundamentally unfair sentences where such reasons exist.

Congress's initial goal in passing the Comprehensive Crime Control Act was to abolish federal parole and create a "completely restructured guidelines sentencing system." S. Rep. No. 98-225, at 52, 53 n.74 (1983). But with the elimination of parole as a corrective measure in cases where early release is warranted, Congress recognized the need for an alternative review process. It therefore allowed for judicial reduction of certain sentences under § 3582(c):

**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, Washington 98101**
**(206) 553-1100**

1
2
3
4
5

> The Committee believes that there may be unusual cases in which an eventual reduction in the length of a term of imprisonment is justified by changed circumstances. These would include cases of severe illness, cases in which *other extraordinary and compelling circumstances* justify a reduction of an unusually long sentence, and some cases in which the sentencing guidelines for the offense of which the defendant was convicted have been later amended to provide a shorter term of imprisonment.

6
7
8
9
10

*Id.* at 55–56 (emphasis added). Put differently, rather than having the Parole Commission review every federal sentence, Congress decided to let sentencing courts decide, in a far narrower band of cases presenting extraordinary and compelling circumstances, if "there is a justification for reducing a term of imprisonment." *Id.* at 56.

11
12
13
14
15
16
17
18
19
20
21

The situations listed in § 3582(c) were thus intended to serve as "safety valves for modification of sentences," enabling sentence reductions when justified by factors that previously could have been addressed through the (now abolished) parole system. *Id.* at 121. This approach was intended to keep "the sentencing power in the judiciary where it belongs," rather than with a federal parole board, and permitted "later review of sentences in particularly *compelling situations*." *Id.* (emphasis added). Notably, Congress imposed no limitations on courts' authority to make such determinations, declining to define what constitutes "extraordinary and compelling reasons" or to otherwise constrain judges' discretion. The mandate was simple: If extraordinary and compelling circumstances were present, they would "justify a reduction of an unusually long sentence." S. Rep. No. 98-225, at 55–56 (1983).

22
23
24

Unfortunately, the establishment of the BOP as a gatekeeper effectively eliminated the safety valve. The BOP, which is of course part of the Department of Justice, hardly ever opened the gate.[3] As a result, Congress, through the First Step Act,

25
26

---

[3] *See, e.g.*, The Answer Is No: Too Little Compassionate Release in US Federal Prisons, Human Rights Watch, 2 (Nov. 2012), https://www.hrw.org/sites/default/files/reports/us1112ForUploadSm.pdf (noting that between 1992 and 2012, the average annual number of

MOTION FOR COMPASSIONATE RELEASE
PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)(i)
(*Ivy Byrd Gaines*, CR03-496-TSZ) - 7

**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, Washington 98101**
**(206) 553-1100**

allowed direct access to the sentencing court once an inmate's request to the BOP has been exhausted.

### 2.    The U.S. Sentencing Commission Has Not Limited "Extraordinary and Compelling Reasons" for Compassionate Release to Medical, Age-Related, or Family Circumstances.

When enacting § 3582(c), Congress delegated the responsibility for expounding upon what constitutes "extraordinary and compelling reasons" to the U.S. Sentencing Commission (the "Commission"). *See* 28 U.S.C. § 994(t) ("The Commission . . . shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples."); *see also* 28 U.S.C. § 992(a)(2) (the Commission shall promulgate general policy statements regarding "the sentence modification provisions set forth in section[ ] . . . 3582(c) of title 18"). The resulting policy statement by the Commission sets forth the following factual considerations: (i) the medical condition of the defendant (including terminal illness and other serious conditions and impairments); (ii) the age of the defendant (for those 65 and older with serious deterioration related to aging who have completed at least 10 years or 75 percent of the term of imprisonment); (iii) the family circumstances of the defendant (where a child's caregiver or spouse dies or becomes incapacitated without an alternative caregiver); and (iv) "other reasons" as determined by the BOP. U.S.S.G. § 1B1.13, Application Note 1(A). The fourth category specifically includes "an extraordinary and compelling reason other than, or in combination with," the first three. *Id.* Additionally, the commentary makes clear that the extraordinary and compelling reasons "need not have been unforeseen at the time of sentencing in order to warrant a reduction in the term of imprisonment." U.S.S.G. § 1B1.13, Application Note 2. In other words, even if an "extraordinary and compelling reason reasonably could

---

prisoners who received compassionate release following a motion by the BOP was less than two dozen).

MOTION FOR COMPASSIONATE RELEASE
PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)(i)
(*Ivy Byrd Gaines*, CR03-496-TSZ) - 8

**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, Washington 98101**
**(206) 553-1100**

have been known or anticipated by the sentencing court, [that fact] does not preclude consideration for a [sentence] reduction." *Id.*

As the above language makes clear, extraordinary and compelling reasons for a sentence reduction may exist even when an inmate is not elderly, ill, or facing complicated family circumstances. And though the policy statement—which has not been amended since the passage of the First Step Act—vests the Director of the BOP with the authority to determine when such "other reasons" might warrant a reduction in a particular case, that language is now irreconcilable with the revised statute, which permits a defendant to bring a § 3582 motion to the Court without any response from the BOP or even if the BOP expressly decides that no reasons warrant a reduction of sentence. Accordingly, that aspect of the commentary is not binding on the courts for two reasons: (1) the Guidelines are advisory only, *see United States v. Booker*, 543 U.S. 220 (2005); and (2) it is inconsistent with the text and the undisputed purpose of the First Step Act. *See United States v. Da Cai Chen*, 127 F.3d 286, 291 (2d Cir. 1997) (commentary that relates to a statute, or to a guideline that mirrors as statute (as here), is not entitled to deference); *see also United States v. Pierninanzi*, 23 F.3d 670, 683 (2d Cir. 1994). Indeed, at least three district courts, since the passage of the First Step Act, have observed that §1B1.13 "has not yet been updated to reflect that defendants (and not just the BOP) may move for compassionate release," *United States v. McGraw*, No. 2:02-cr-00018 (LJM)(CMM), 2019 WL 2059488, at *2 (S.D. Ind. May 9, 2019), and "[b]ecause the current version of the Guideline policy statement conflicts with the First Step Act, the newly-enacted statutory provisions must be given effect." *United States v. Cantu-Rivera*, No. H-89-204, 2019 WL 2578272, at *2 n.1 (S.D. Tex. June 24, 2020); *see also United States v. Cantu*, 423 F. Supp. 3d 345, 351 (S.D. Tex. 2019) ("Given the changes to the statute, the policy-statement provision that was previously applicable to 18 U.S.C. § 3582(c)(1)(A) no longer fits with the statute and thus does not

**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, Washington 98101**
**(206) 553-1100**

comply with the congressional mandate that the policy statement must provide guidance on the appropriate use of the sentence-modification provisions under § 3852.").

More recently, this Court reached the same conclusion in *United States v. Grubbs*, in the context of a COVID-19-related motion for compassionate release:

> In the application notes to the United States Sentencing Guidelines ("USSG") § 1B1.13, the Commission has described three categories of potentially 'extraordinary and compelling reasons,' namely medical condition, age, and family circumstances, *see* USSG § 1B1.13 cmt. n.1(A)-(C), as well as a 'catch-all' provision, *id.* cmt. n.1(D), which 'opens the door' to considering other factors other than those specifically enumerated[.]" . . . . The Court concludes that, given the 'catch-all' provision of the Commission's application notes and the non-binding status of the comments to USSG § 1B1.13, it has discretion to construe the meaning of 'extraordinary and compelling reasons.'

2020 WL 3839619, at 2 n.2.

The Court's authority to reduce Mr. Gaines's unusually long sentence is not only consistent with the statute, but also with the language in the policy statement, which makes clear that "[t]he court is in a unique position to determine whether the circumstances warrant a reduction (and, if so, the amount of reduction)" and encouraging the filing of a motion for compassionate release where a defendant "meets any of the circumstances set forth in [the] Application Note." U.S.S.G. § 1B1.13, n.4. As mentioned above, in amending the language of 18 U.S.C. § 3582(c)(1)(A), Congress finally empowered *courts* to make this critical determination, even in the face of a BOP determination that a defendant's case is not extraordinary or compelling.

As Judge Bryan explained, it is the Court that is in the best position to determine whether the circumstances warrant a reduction and the amount of the reduction:

> Second, 28 U.S.C. § 944(f) required the Sentencing Commission in the Policy Statement, to include "the criteria to be applied" in considering extraordinary and compelling reasons for sentence reduction. This the Commission failed to do, except for determining, in Application Note 4, that "The court is in an unique position to determine whether the

MOTION FOR COMPASSIONATE RELEASE
PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)(i)
(*Ivy Byrd Gaines*, CR03-496-TSZ) - 10

**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, Washington 98101**
**(206) 553-1100**

Case 2:03-cr-00496-TSZ   Document 132   Filed 09/25/20   Page 11 of 19

circumstances warrant a reduction (and, if so, the amount of reduction), after considering the factors set forth in 18 U.S.C. § 3553(a) and the criteria set forth in this policy statement" followed by a non-exclusive list of things the Court should consider. This listing of things the Court should consider hardly sets the criteria for a finding of extraordinary and compelling reasons for a sentence reduction, leaving it to the Court to determine what qualifies, after appropriate analysis.

*United States v. McPherson*, No. CR94-5708-RJB, __ F. Supp. 3d. __, 2020 WL 1862596, at *4 (W.D. Wash. Apr. 14, 2020). Citing to *McPherson*, this Court "conclude[d] that, given the 'catch-all' provision of the Commission's application notes and the non-binding status of the comments to U.S.S.G. § 1B.13, it has discretion to construe the meaning of 'extraordinary and compelling reasons.'" *United States v. Grubbs*, No. CR16-228 TSZ, 2020 WL 3839619 (W.D. Wash. July 8, 2020).

This Court therefore may make an independent assessment of Mr. Gaines's case in considering whether extraordinary and compelling reasons warrant the reduction of his sentence.

### 3. Extraordinary and Compelling Circumstances Warrant a Reduction in Mr. Gaines's Sentence.

The practice of "stacking" enhanced § 924(c) charges in a first offense has received wide condemnation for many years. This practice was finally eliminated with the passage of the First Step Act. The government can no longer invoke the dramatically enhanced mandatory consecutive sentences prescribed for "second or successive" § 924(c) convictions in the same case in which the first such conviction is obtained. Such staggering sentences will now be permissible only after a truly "subsequent" conviction. Notably, the fact that this amendment was titled a "Clarification of Section 924(c)" makes clear that § 924(c) was never intended by Congress to result in sentences like the one at issue here. That fact alone constitutes an extraordinary and compelling basis for a reduction of sentence.

MOTION FOR COMPASSIONATE RELEASE
PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)(i)
(*Ivy Byrd Gaines*, CR03-496-TSZ) - 11

**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, Washington 98101**
**(206) 553-1100**

The sentence the Court was required to impose in this case was extraordinarily long, and may be the longest sentence ever imposed in this district. It is in fact longer than a natural life sentence and dwarfs the median sentences imposed for even the most heinous offenses, including murder. *See* 2019 Annual Report and Sourcebook of Federal Sentencing Statistics, U.S. Sentencing Comm'n, at 65 (Mar. 23, 2020), available at https://www.ussc.gov/research/sourcebook-2019 (stating median sentence for murder is 20 years). No one other than the biblical character Methuselah could be expected to serve such a sentence. Some perspective is important. The government, knowing full well the facts of this case, offered Mr. Gaines a plea to a 25-year agreed sentence. It was determined at that time that 25 years was sufficient to address all of the government's concerns and the interests reflected by 18 U.S.C. § 3553(a). Yet, he received a sentence more than seven times greater than the 25-year offer simply because he exercised his constitutional right to trial. These circumstances are also part of the "extraordinary and compelling" calculus before this Court. As an Eastern District of New York district judge concluded, these facts, combined with the former "§ 924(c) sentencing weaponry" that resulted in brutal sentences, constitute "extraordinary and compelling" reasons:

> The Court readily concludes, on the facts as detailed above—including the brutal impact of Haynes's original sentence, its drastic severity as compared to [his co-defendant's], its harshness as compared to the sentences imposed on similar and even more severe criminal conduct today, and the extent to which that brutal sentence was a penalty for Haynes's exercise of his constitutional right to trial—that the FSA's elimination of the § 924(c) sentencing weaponry that prosecutors employed to require that sentence is an extraordinary and compelling circumstance warranting a reduction in sentence under the compassionate release statute.

*Haynes*, 2020 WL 1941478, at *15.

MOTION FOR COMPASSIONATE RELEASE
PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)(i)
(*Ivy Byrd Gaines*, CR03-496-TSZ) - 12

**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, Washington 98101**
**(206) 553-1100**

Numerous other courts confronted with similar facts have agreed that changes to federal sentencing law which created enormous sentencing disparity constitutes an "extraordinary and compelling reason" for compassionate release. *See*, *e.g.*, *United States v. Urkevich*, No. 8:03CR37, 2019 WL 6037391, at *8 (D. Neb. Nov. 14, 2019) ("A reduction . . . is warranted by extraordinary and compelling reasons, specifically the injustice of facing a term of incarceration forty years longer than Congress now deems warranted for the crimes committed."); *United States v. Maumau*, No. 08-cr-00758, 2020 WL 806121, at *7 (D. Utah Feb. 18, 2020) ("[T]he changes in how § 924(c) sentences are calculated is a compelling and extraordinary reason to provide relief"). Mr. Gaines, who now accepts responsibility for his crimes, certainly regrets not accepting that offer. But how can one objectively say that justice demands more than 25 years of a person's life as payment for the exercise of the constitutional right to trial?

In addition, a motion for relief under 18 U.S.C. § 3582(c)(1)(A)(i) requires a court to consider other factors that may warrant relief, including the defendant's rehabilitation and information bearing on the person Mr. Gaines is today. *See, e.g., United States v. Chan*, No. 96-cr-00094, 2020 WL 1527895, at *5 (N.D. Cal. Mar. 31, 2020) ("[W]hen the Court considers the record presented by Chan regarding his rehabilitation efforts in combination with the amendments to Section 924(c)'s stacking provisions, the Court concludes he has demonstrated extraordinary and compelling reasons to reduce his sentence."). Further, the Court should consider reports issued by the Sentencing Commission documenting the sentencing disparities between white and African American defendants charged, convicted, and sentenced for § 924(c) and other firearms offenses carrying mandatory minimum penalties. *See Cantu-Rivera*, 2019 WL 2578272, at *2 (June 24, 2019) (court considered rehabilitation and the "unwarranted [sentencing] disparities among defendants" in determining a sentencing reduction was appropriate). This information is relevant to both the argument that Mr. Gaines's case

MOTION FOR COMPASSIONATE RELEASE
PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)(i)
(*Ivy Byrd Gaines*, CR03-496-TSZ) - 13

**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, Washington 98101**
**(206) 553-1100**

presents extraordinary and compelling circumstances and to the considerations of safety to the community and the required § 3553(a) factors.

**C.     The Criteria for Reassessing the Length of Mr. Gaines's Sentence Weigh Strongly in Favor of a Sentence Reduction.**

In determining whether Mr. Gaines's sentence should be reduced, the Court must decide, *inter ali*a, the degree to which Mr. Gaines presents a danger to the safety of any other person or to the community, if any, as provided in 18 U.S.C. § 3142(g). U.S.S.G. § 1B1.13(2). Then the Court looks to the factors outlined in 18 U.S.C. § 3553(a). As explained below, all of these factors weigh strongly in favor of relief.

**1.     Mr. Gaines Is Not a Danger.**

Mr. Gaines's actions before his bank robbery spree, and his actions after entering prison, are strong evidence that he would not be a danger to the community when released. Though he engaged in serious criminal conduct that was deserving of serious punishment, he had no history of such crimes before this spree of bank robberies, and no history of any other criminal conduct. The steps he has taken toward rehabilitation over the last 17 years are commendable. He has no significant history of disciplinary problems, and no disciplinary issues for the last six years, no history of violence while in prison, and only a few relatively minor disciplinary issues over his entire time at the BOP. Ex. 2 (BOP disciplinary record).

According to the BOP, his PATTERN score is minimum risk for recidivism, the lowest risk category.[4]

The bank robberies Mr. Gaines committed and his arrest are all described in the PSR. In most of the robberies, he was armed with a firearm which he brandished,

---

[4] Mr. Gaines, in correspondence to counsel, reports that his counselor told him his PATTERN score was medium-low for risk. But in the information provided to the government with some of Mr. Gaines's records, it was reported that his PATTERN score was minimal risk for recidivism. This would be consistent with Mr. Gaines's current age, his prison record, and his complete lack of prior criminal history.

MOTION FOR COMPASSIONATE RELEASE
PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)(i)
(*Ivy Byrd Gaines*, CR03-496-TSZ) - 14

**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, Washington 98101**
**(206) 553-1100**

pointed, or displayed. PSR ¶¶ 2–6. As noted by the government's sentencing memorandum, these robberies were frightening and traumatizing for the tellers, and in one of the robberies two children happened to be in the bank with their mother who was a teller. But there is no suggestion in the PSR or the government's memo that Mr. Gaines fired a weapon, attempted to fire a weapon, or struck any of the tellers. And his arrest appears to have been uneventful, without a police chase, and non-violent.[5]

### 2.   Mr. Gaines's Positive Rehabilitation Efforts While in Prison

As set forth in his attached programming history with BOP, Mr. Gaines has taken a number of courses and classes. Ex. 3 (BOP education records). In addition, he was instrumental in creating, and actively involved as a leader in, an inmate-led mentoring program entitled M.E.N.T.O.R. (men teaching others responsibility). He also helped create U.N.I.T.E., another inmate-led program designed to take steps to make changes for the better, to improve their quality of life as well as that of their families and communities. These inmate-led programs were created under BOP Program Statement 5381.05.

Theresa Bitondo, the mother of an inmate Mr. Gaines mentored, writes:

> He changed my son for the better when they met back in F.C.I Canaan, back in 2010 or 2011. He encouraged my son to change the way he thought about his confinement, to not waste any time and to spend everyday reading and helping other inmates out. My son had a completely new attitude and it was an extremely healthy one!

Ex. 4 (Bitondo letter).

---

[5] This is in contrast to two armed bank robbery cases in this district in which defendants have recently been granted compassionate release based on their age and medical conditions, but whose underlying robberies involved either firing a gun or a dangerous and protracted police chase, or both. *See United States v. Charles Clagett*, No. CR97-265-RSM, Dkts. 145, 238; *United States v. Wayne Morris*, No. CR99-174-JCC, Dkts. 234 at 1–3, 241. Wayne's brother Everett Morris, who carried the firearm during the robbery and fired the firearm at law enforcement several times during the chase at the end of the last robbery, pled guilty and was sentenced to 25 years as recommended by the government. *Id.*, Dkt. 241 at 3.

MOTION FOR COMPASSIONATE RELEASE
PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)(i)
(*Ivy Byrd Gaines*, CR03-496-TSZ) - 15

**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, Washington 98101**
**(206) 553-1100**

Due to the challenges of Mr. Gaines's incarceration in Louisiana, the COVID-19 pandemic, and ensuing quarantines experienced at USP Pollock, undersigned counsel has had difficulty arranging a telephone call with Mr. Gaines and is relying exclusively at this time on written communications. Counsel now has a call scheduled with Mr. Gaines for September 29, 2020, and expects to develop more mitigation information to present to the Court with respect to Mr. Gaines's efforts at rehabilitation while incarcerated.

### 3.    The Relevant § 3553(a) Factors Weigh Strongly in Favor of Relief.

This Court must next weigh the factors set forth in 18 U.S.C. § 3553(a) to determine whether Mr. Gaines's request for a sentence reduction should be granted. As discussed above, his rehabilitation and his good behavior during his incarceration (with limited disciplinary history) weighs in favor of a reduced sentence. While his crimes were serious, he has now accepted responsibility for them and has already endured serious punishment for them.[6]

The 17-plus years Mr. Gaines has already served in prison have changed his outlook on life. He has focused on his rehabilitation and positive behavior in prison and has dedicated himself to mentoring and helping younger inmates. And much of this work he has done took place during a time when he had little to no hope for release form his extraordinarily long sentence.

Mr. Gaines has already served more than sufficient time to achieve the objectives of his sentence and incarceration, including to deter similar misconduct by others and to protect the public from similar conduct in the future.

---

[6] Mr. Gaines has expressed both remorse and acceptance of responsibility for his crimes to undersigned counsel. He is preparing a letter to the Court, which will be submitted to the Court once received.

MOTION FOR COMPASSIONATE RELEASE
PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)(i)
(*Ivy Byrd Gaines*, CR03-496-TSZ) - 16

**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, Washington 98101**
**(206) 553-1100**

1    The Court should also consider the need to avoid unwarranted sentence

2    disparities among defendants with similar records who have been found guilty of

3    similar conduct. 18 U.S.C. § 3553(a)(6). This factor, too, weighs strongly in favor of a

4    sentence reduction for Mr. Gaines. Following the enactment of the First Step Act, never

5    again will a defendant facing their first § 924(c) charge, and similarly situated to

6    Mr. Gaines, face onerous, 25-year enhanced mandatory consecutive sentences for

7    "second or successive" § 924(c) charges in the same case. There will be a glaring

8    disparity between Mr. Gaines's sentence and those of defendants who have committed

9    similar crimes post the enactment of the First Step Act, merely because of timing of the

10   offenses committed.

11       The Court should also look at the ultimate results in other cases involving

12   multiple bank robberies and § 924(c) cases in this district. The sentences received by

13   the Morris brothers and by Mr. Clagett, two of which were reduced by compassionate

14   release orders, are fair to consider. *Supra* at note 5. An additional case that warrants

15   comparison is the settlements and sentences received by Steven Paul Meyers and Mark

16   John Biggins, co-defendants of the infamous Hollywood bandit, who participated in a

17   string of violent takeover robberies, culminating in a shoot-out with the police and FBI

18   agents. *See* https://www.historylink.org/File/9043; and

19   https://en.wikipedia.org/wiki/Scott_Scurlock. Meyers pled guilty to a stipulated

20   sentence range of 255 to 288 months and was sentenced to 255 months. Biggins, like

21   Mr. Gaines, had no criminal history, was 42 years old at sentencing, and, despite the

22   fact that the evidence demonstrated he had fired a number of rounds during the police

23   chase, was sentenced to 255 months as well.

24   https://archive.seattletimes.com/archive/?date=19970515&slug=2539301. *See United*

25   *States v. Biggins and Meyers*, No. CR97-068-RSL (W.D. Wash.), Dkts. 49, 50.

26

MOTION FOR COMPASSIONATE RELEASE
PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)(i)
(*Ivy Byrd Gaines*, CR03-496-TSZ) - 17

**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, Washington 98101**
**(206) 553-1100**

1    Biggins, Meyers, Clagett, and the Morris brothers were all white men prosecuted

2    and sentenced in this district for bank robberies that were far more violent than those

3    committed by Mr. Gaines, who is African American. In examining sentencing disparity,

4    racial disparity has been identified by the Sentencing Commission with respect to the

5    application of mandatory minimum sentences and § 924(c) prosecutions in particular.

6    The data reported by the Commission reveals that 52.6% of those convicted and

7    sentenced for § 924(c) charges were black and 21.1% were white. *See* United States

8    Sentencing Commission Quick Facts, 18 U.S.C. § 924(c) Firearms Offenses (2019

9    report) at p. 1, available at https://www.ussc.gov/sites/default/files/pdf/research-and-

10   publications/quick-facts/Section_924c_FY19.pdf.

11        In an earlier, more detailed report, the Commission found that:

12   6.  Firearms mandatory minimum penalties continue to impact Black
13   offenders more than any other racial group.

14   Black offenders were convicted of a firearms offense carrying a
15   mandatory minimum more often than any other racial group. In fiscal year
     2016, Black offenders accounted for 52.6 percent of offenders convicted
16   under section 924(c), followed by Hispanic offenders (29.5%), White
     offenders (15.7%) and Other Race offenders (2.2%).

17
18   **The impact on Black offenders was even more pronounced for**
     **offenders convicted either of multiple counts under section 924(c) or**
19   **offenses carrying a mandatory minimum penalty under the Armed**
     **Career Criminal Act. Black offenders accounted for more than two-**
20   **thirds of such offenders (70.5% and 70.4%, respectively).**

21
22   Black offenders also generally received longer average sentences for
     firearms offenses carrying a mandatory minimum penalty than any other
23   racial group. In fiscal year 2016, Black offenders convicted under section
     924(c) received an average sentence of 165 months, compared to 140
24   months for White offenders and 130 months for Hispanic offenders. Only
     Other Race offenders received longer average sentences (170 months),
25   but they accounted for only 2.2 percent of section 924(c) offenders.

26

MOTION FOR COMPASSIONATE RELEASE
PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)(i)
(*Ivy Byrd Gaines*, CR03-496-TSZ) - 18

**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, Washington 98101**
**(206) 553-1100**

Similarly, Black offenders convicted of an offense carrying a mandatory minimum penalty under the Armed Career Criminal Act received longer average sentences than any other racial group at 185 months, compared to 178 months for White offenders, 173 months for Hispanic offenders, and 147 months for Other Race offenders.

*See* Mandatory Minimum Penalties for Firearms Offenses in the Federal Criminal Justice System (March 2018), https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2018/20180315_Firearms-Mand-Min.pdf , at 6, 24–25.

Whatever the reason for these disparities, generally or in this case—explicit bias, implicit bias, or even a higher trial rate and trial penalty among minority defendants who may have an understandable heightened level of distrust in the criminal justice system, the advice they receive from lawyers who are more often than not white, or some other factors—this stark disparity has relevance here. This is particularly true where Mr. Gaines's sentence is likely the longest or one of the longest imposed in this district for these types of offenses for a first offender where no one was physically harmed and the firearm was never discharged.

## IV.    Conclusion

Congress never intended to permit, let alone to mandate, the excessive punishment Mr. Gaines received in this case. It has now given the Court the power to grant Mr. Gaines relief from that sentence. Mr. Gaines respectfully requests that the Court take this opportunity to grant a reduction in his sentence based on extraordinary and compelling reasons, and to reduce his sentence to time served.

DATED this 25th day of September 2020.

Respectfully submitted,

s/ *Michael Filipovic*
Federal Public Defender
Attorney for Ivy Gaines

MOTION FOR COMPASSIONATE RELEASE
PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)(i)
(*Ivy Byrd Gaines*, CR03-496-TSZ) - 19

**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, Washington 98101**
**(206) 553-1100**